1997 SD 129

**Michael and Marnie GOULD, Plaintiffs and Appellants,**

v.

**PENNINGTON COUNTY BOARD OF EQUALIZATION, Defendant and Appellee.**

**No. 19611.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided Nov. 19, 1997.

Frank A. Bettmann of Finch Bettmann Maks, P.C., Rapid City, for plaintiffs and appellants.

Mark W. Barnett, Attorney General, Glenn A. Brenner and Ronald D. Buskerud, Office of States Attorney, Rapid City, for defendant and appellee.

TAPPE, Circuit Judge.

[¶ 1.] Michael and Marnie Gould (Goulds) are challenging the constitutionality of SDCL 10–6–58 which provides that:

> Any agricultural land, as defined in SDCL 10–6–31.3, which sells for more than one hundred fifty percent of its agricultural income value is hereby classified for purposes of ad valorem taxation. The agricultural income value shall be determined pursuant to SDCL 10–6–62.

[¶ 2.] Agricultural land is defined in SDCL 10–6–31.3.[1]

---

1.  SDCL 10–6–31.3 provides:

    For tax purposes, land is agricultural land if it meets two of the following three criteria:
    (1) At least thirty-three and one-third percent of the total family gross income of the owner is derived from the pursuit of agriculture as defined in subdivision (2) of this section or it is a state-owned public shooting area or a state-owned game production area as identified in § 41–4–8 and it is owned and managed by the Department of Game, Fish and Parks;
    (2) Its principal use is devoted to the raising and harvesting of crops or timber or fruit trees, the rearing, feeding and management of farm livestock, poultry, fish or nursery stock, the production of bees and apiary products, or horticulture, all for intended profit pursuant to subdivision (1) of this section. Agricultural real estate also includes woodland, wasteland and pasture land, but only if the land is held and operated in conjunction with agricultural real estate as defined and it is under the same ownership; (3) It consists of not less than twenty acres of unplatted land or is a part of a contiguous ownership of not less than eighty acres of unplatted land. The same acreage specifications apply to platted land, excluding land platted as a subdivision, which is in an unincorporated area. However, the board of county commissioners may increase the minimum acre requirement up to one hundred sixty acres.

[¶ 3.] Goulds argue that the effect of 10–6–58 is to create a separate class of agricultural land, in violation of art. VIII, § 15 of the South Dakota Constitution. That article provides as follows:

> The Legislature shall make such provision by general taxation and by authorizing the school corporations to levy such additional taxes as with the income from the permanent school fund shall secure a thorough and efficient system of common schools throughout the state. The Legislature is empowered to classify properties within school districts for purposes of school taxation, *and may constitute agricultural property a separate class*. Taxes shall be uniform on all property in the same class. (emphasis added).

[¶ 4.] Goulds contend that the foregoing provision of the Constitution authorizes the legislature to create only *one* class of agricultural property for taxation purposes, and that SDCL 10–6–58, in effect, creates *two* classes of agricultural property: one class that sells for less than 150 percent of its agricultural income value, and another class which sells for more than 150 percent of its agricultural income value. We agree, holding that SDCL 10–6–58 is unconstitutional, in violation of art. VIII, § 15 of the South Dakota Constitution. Goulds raise three other issues on their appeal, but because we hold SDCL 10–6–58 to be unconstitutional, we need not address those issues.[2]

## FACTS

[¶ 5.] The facts are stipulated. Goulds purchased the land in question in 1994 for $125,000. Immediately prior to the purchase it was assessed for tax purposes at $20,700. The 1995 assessment raised the valuation of the land for tax purposes to $107,600, a 519.8 percent increase. The Pennington County Board of Equalization, in raising the assessment, relied upon SDCL 10–6–58 through 10–6–62, which requires all agricultural property that sells for a price which is greater than 150 percent of the agricultural income

producing value of the land to be classified separately from all other agricultural land. Once a piece of agricultural property meets the "classification" requirements of SDCL 10–6–58, the land is then valued "at the price for which such land sold multiplied times the level of assessment for agricultural land within the county." SDCL 10–6–60. The circuit court affirmed the County Board's assessment. The land in question is now, as it was before the purchase and reassessment used for agricultural purposes.

## ANALYSIS

[¶ 6.] At the outset, it must be noted that there is a strong presumption that the laws enacted by the legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision. *Cary v. City of Rapid City, South Dakota*, 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citing *Sedlacek v. South Dakota Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989)).

[¶ 7.] Prior to 1929, art. VIII, § 15 was silent as to the legislature's authority to classify agricultural property as a separate class for tax purposes. The controlling constitutional provision was art. XI, § 2, which provided that "taxes shall be uniform on all property of the same class." Thus, the legislature could make classifications of property for the purposes of taxation, provided that all persons within an established classification were treated equally and that the classifications were based upon some ground of difference having a fair and substantial relation to the object of the legislation. *Simmons v. Ericson*, 54 S.D. 429, 223 N.W. 342 (1929). In *Simmons*, a tax levy of only 10 mills on agricultural property while nonagricultural

---

**2.** The other issues Goulds raise are: (1) whether the application of SDCL 10–6–58 through 60 result in a valuation which exceeds the property's actual value thereby making such value, and therefore the statutes unconstitutional; (2) whether the application of SDCL 10–6–58 through 60 result in non-uniform taxation of

property otherwise in the same class, thereby making such taxation inequitable and in violation of the South Dakota Constitution; (3) whether the resulting higher tax burden created by SDCL 10–6–58 through 60 upon certain agricultural property violate this state's public policy.

property carried a tax levy of 25 mills was found to be in conflict with art. XI, § 2 of the South Dakota Constitution. In *Simmons,* this Court reasoned that there was no reasonable basis for making a distinction between the rate of tax of agricultural lands and other real estate. That same year, in response to *Simmons,* the South Dakota legislature approved the submission of the issue to the voters. In 1930, the voters approved the submitted amendment to art. VIII, § 15, which added thereto the following: "the legislature is empowered to classify properties within school districts for the purposes of school taxation, and may constitute *agricultural lands a separate class*[3]." (emphasis added). There is no question that the 1930 amendment was a result of the *Simmons* decision. *See Great Northern Railway v. Whitfield,* 65 S.D. 173, 272 N.W. 787 (1937).

[¶ 8.] Thus empowered, the 1931 legislature enacted SDCL 10–6–31, which classified all property into two separate classes: 1) agricultural property; and 2) nonagricultural property. The power of the legislature to divide all property into those two separate classes was affirmed in *Great Northern Railway Company, supra.* The legislature defined agricultural land in SDCL 10–6–33. It could have defined it in some other manner, but obviously the definition would have to bear some relationship to the terms agricultural and non-agricultural lands. The legislated definition is reasonable and serves to make a meaningful distinction between agricultural and non-agricultural land.

[¶ 9.] The statutory scheme thus established by the 1930 amendment to the constitution and the enactment of SDCL 10–6–31 continued without major changes until 1993. During those sixty-three years, the legislature did, from time to time, enact varying statutes relating to defining agricultural property, methods of classifying agricultural property, and determining the value of agricultural property. *See, e.g.,* SDCL 10–6–

33.1 (relating to criteria for determining value of agricultural land); SDCL 10–6–31.2 (agricultural land classified without regard to zoning); SDCL 10–6–31.3 (method of determining whether land is agricultural or nonagricultural); SDCL 10–6–31.5 (relating to tax freezes on agricultural property where the owner and the property meet certain criteria); and SDCL 10–6–33.3 (property not used for agriculture separately assessed).

[¶ 10.] Furthermore, in accordance with art. VIII and SDCL 10–6–31, the legislature acted on many occasions to "classify" nonagricultural properties. In all of those instances, the "classification" had nothing to do with agricultural *land,* but only with other non-agricultural properties or agricultural structures. *See, e.g.,* SDCL 10–6–35.1 (relating to classifying new additional structures and additions.); SDCL 10–6–35.21 through 10–6–35.25 (regarding structures); and 10–6–54 and 55 (regarding new non-residential *agricultural structures* ).

[¶ 11.] It was not until 1993 that the South Dakota Legislature attempted to add another class of agricultural *land* with the passages of SDCL 10–6–58, *et seq.* The nearest this Court came to dealing with the precise issue presented here is in *Matter of Butte County,* 385 N.W.2d 108 (S.D.1986).[4] In that case, the taxing authority attempted to designate *irrigated* farmland as a *separate* class. The circuit court had concluded that irrigated farmland should not be separately classified. On appeal, the Court said, "Butte County attempted to establish a separate classification for irrigated land. This, we conclude, Butte County cannot do." *Id.* at 111. The Court said, "irrigated land, as such, cannot be separately classified." *Id.* at 113. It should be noted that the Court did say that irrigatability is a factor to be considered in *assessing* land value. *Id.* at 112. The precise issue of the constitutionality of SDCL 10–6–58, *et seq.* was not addressed in *Butte County,*[5] however, and *Great Northern Rail-*

3. In 1965, the voters amended the word "lands" to read "property". The 1965 amendment is significant, because it permitted the legislature to classify agricultural properties other than land, separately.

4. Circuit Judge Merton B. Tice ruled in Danse v. Pennington County Board of Equalization, (7th

Circuit, Pennington County 96–465) that SDCL 10–6–58 is unconstitutional. The issues presented in that case were virtually identical to the instant case.

5. Butte County predated SDCL 10–6–58 by seven years.

*way* merely recognized the power of the legislature to constitute agriculture as a separate class, the power being derived from art. VIII, § 15 of the South Dakota Constitution. Thus, we are called upon to determine whether that statute is constitutional.

[¶ 12.] County board relies upon the statement in *Great Northern Railway* that "the legislature would be justified in classifying ... '*four* classes or *twenty-four* classes.'" 65 S.D. at 179, 272 N.W. at 790. This is not authority for the separate class created here, because in *Great Northern Railway,* that issue was not presented. The Court there was discussing only the question of whether it was permissible for the legislature to provide for separate classes, one agricultural and one nonagricultural.

■ [¶ 13.] The narrower issue here is whether the legislature may classify agricultural lands as more than one class of properties. The *classes* (other than agricultural land) may well be "four or twenty-four," as mentioned in *Great Northern Railway,* but the constitution specifically states that agricultural land constitutes a separate class. *See* S.D. Const. art. VIII, § 15. Had the constitution not meant to create only one class for agricultural land, there was no need for the clause quoted above. The constitution would have simply read "the legislature is empowered to classify properties within school districts for the purposes of school taxation." The clause contained in art. VIII, § 15 providing, "and may constitute agricultural property as *a* separate class," clearly indicates that agriculture, if classified separately (as was subsequently done by the passing of SDCL 10–6–31) was to be a class unto itself. The use of the language "*a* separate *class*" in the singular, we believe, shows that agriculture was to be designated as one class of property and *all other properties* were the other classes of property. No other reading of the clause makes sense. Had the 1930 amendment not intended that agriculture should be treated as a *singular* class, the amending clause, "and may constitute agricultural property a separate class," would not have been necessary, because that section of art. VIII already provides for the power of the legislature to "classify properties."

[¶ 14.] SDCL 10–6–58 creates a *separate class* of agricultural land i.e., land that "sold for more than 150 percent of its agricultural income-producing value." It should be noted that the enactment of SDCL 10–6–58 was not merely an attempt to determine a different method of valuation. SDCL 10–6–33 determines the basis for determining valuation of all property for tax purposes. SDCL 10–6–33.1 then provides for special factors to be considered in determining value of agricultural land. Both statutes merely describe how taxing authorities set forth such methods of valuation of both agricultural and nonagricultural land. *Hot Springs, Etc. v. Fall River Landowners,* 262 N.W.2d 33, 37 (S.D. 1978).

[¶ 15.] Although SDCL 10–6–61 states that "land classified pursuant to 10–6–58 shall be taxed as agricultural land," such statement merely pays lip service to the constitutional and statutory schemes that agricultural property should be classified as a distinct class. SDCL 10–6–58 purports to classify for *taxation.*

[¶ 16.] Property is classified for three purposes: (1) taxation; (2) assessment; and (3) valuation. It is permissible to classify all property for assessment and valuation, but 10–6–58 is an entirely new concept that attempts to value, assess, and tax agricultural land without regard to its status as agricultural land. The property here is agricultural land. To value it as non-agricultural land without regard to its agricultural character flies in the face of the constitutional amendment which distinguished between the two classes.

[¶ 17.] With the passage of 10–6–58, any meaningful definition of agricultural property is blurred, to say the least. The statute attempts to treat land that is clearly agricultural land (as defined by 10–6–33 or by any other logical definition) and value it by multiplying the price for which it sold times the level of assessment of other agricultural land in the county. The adopted criteria bears *no* relationship to any agricultural factors (type of land, productivity, etc.) but is based almost entirely on its sales price. Valuing the agricultural land, as in the present case, based upon its sales price is to set it apart from agricultural property and treat it as "non-

agricultural," or other property. In this case, property that is perhaps held for speculation.

[¶ 18.] Some statutes define methods of *valuing* agricultural land; some statutes define methods of *assessing* land; and some statutes define methods of *measuring* market value. SDCL 10–6–58 does none of these. It creates a new classification. It takes land that is clearly agricultural land and treats it as agricultural land held for resale or agricultural land for which the owner may have paid too much. This Court has rejected the notion that the law requires or permits an assessor to consider whether the land is economically self-sufficient. *Nielsen v. Erickson*, 272 N.W.2d 82, 86 (S.D.1978).[6] We are reluctant to declare acts of the legis-lature unconstitutional. SDCL 10–6–58, however, is unconstitutional, because it attempts to create more than one class of agricultural land in violation of art. VIII, § 15 of the South Dakota Constitution. The judgment of the circuit court is reversed and remanded for disposition in accordance with this decision.

[¶ 19.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

[¶ 20.] TAPPE, Circuit Judge, for KONENKAMP, J., disqualified.

---

**6.** In *Telkamp v. South Dakota State Bd. of Equalization*, 515 N.W.2d 689 (S.D.1994) this Court held that land held for economic development purposes did not qualify for classification of agricultural property. As Justices Sabers and Wuest noted in that case, however, any discussion in Telkamp relating to art. VIII, § 15 is dicta. In Telkamp, the owner stipulated that the property was not agricultural land and the Supreme Court in that case only gratuitously suggested agricultural land could be treated with several classes for assessment. *Id.* at 692.